IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**KENNETH R. SPIRITO,**

Petitioner,

v.   CRIMINAL ACTION NO. 4:19-CR-43

**UNITED STATES OF AMERICA,**

Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Kenneth R. Spirito's ("Petitioner") Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to Title 28, United States Code, Section 2255 ("§ 2255 Motion"). ECF No. 181 ("Pet'r's Mot."). The Government filed a Response in Opposition and Petitioner replied. ECF No. 190 ("Resp. Opp'n"); ECF No. 191 ("Pet'r's Reply"). The Court held a hearing on Petitioner's alleged *Brady* violation, and this matter is now ripe for judicial determination. ECF No. 194. For the reasons below, Petitioner's Motion is **DENIED**.[1]

**I. FACTUAL BACKGROUND**

On September 9, 2019, Petitioner was named in a 24-count Superseding Indictment. ECF No. 29. Counts One through Eleven and Nineteen charged Petitioner with Conversion and Misapplication of Property from Organization Receiving Federal Funds, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2. *Id.* Counts Twelve through Seventeen charged Petitioner with Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957 and 2. *Id.* Count Eighteen charged Petitioner with Falsification of Records in

---

[1] Petitioner also moved to strike the factual allegations the government made in its Response and to compel the production of discovery information. The Court ruled from the bench and both Motions are **DENIED**.

1

Federal Investigations, in violation of 18 U.S.C. § 1519. *Id.* Counts Twenty through Twenty-three charged Petitioner with Perjury, in violation of 18 U.S.C. § 1623(a). *Id.* Count Twenty-four charged Petitioner with Obstruction of Justice, in violation of 18 U.S.C. § 1503. *Id.*

Petitioner retained Attorney Trey Kelleter in 2019. *See* ECF No. 11. A ten-day jury trial began on February 25, 2020. ECF No. 56. On March 10, 2020, a jury found Petitioner guilty on all Counts except Count Twenty-two. ECF Nos. 86–87.

According to the Presentence Investigation Report ("PSR"), Petitioner misapplied and laundered money from The Peninsula Airport Commission between June 11, 2014, and November 2015. Present. Investig. Rep. ¶ 6. The Peninsula Airport Commission (PAC) was created by the Virginia Legislature to establish and operate the Newport News/Williamsburg International Airport ("PHF"). *Id.* ¶ 7. The PAC handled economic development and the day-to-day affairs of the airport. *Id.* Petitioner was the PAC's Executive Director from January 4, 2009, to May 15, 2017. *Id.* ¶ 8.

Amid changes at PHF that resulted in approximately a 50% decrease in passenger traffic, Petitioner and the PAC Board searched for solutions. *Id.* ¶ 11, 16. Michael Morisi set out to start a new low-cost airline called People Express Airlines ("PEX"). *Id.* ¶ 12. In 2014, Defendant devised a plan for a loan guaranty that benefited PEX. *Id.* ¶ 25. Shortly after acquiring the loan, PEX defaulted, and the PAC was left responsible for PEX's obligations to TowneBank. *Id.* ¶ 42, 45. Petitioner misapplied funds and then used these funds to make payments on the loan. *Id.* ¶ 50.

On April 21, 2020, Petitioner moved for Judgment of Acquittal. ECF No. 98. On July 10, 2020, this Court granted Petitioner's Motion on Count Twenty-four and denied the Motion on the remaining Counts. ECF No. 123. On July 16, 2020, Petitioner was sentenced to 48 months' probation and restitution in the amount of $2,511,153.16. *See* ECF Nos. 127–129. Petitioner

appealed. ECF No. 132. On October 5, 2022, this Court amended its Judgment after the United States Court of Appeals for the Fourth Circuit Vacated Count 19. ECF No. 171.

Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 on January 9, 2024. On February 20, 2024, this Court ordered Attorney Kelleter, Attorney Littel, and Assistant Federal Public Defender Kmet ("AFPD Kmet") to provide affidavits in response to Petitioner's § 2255 Motion. ECF No. 185. On April 29, 2024, the Government responded to Petitioner's Motion. ECF No. 190. On May 20, 2024, Petitioner replied. ECF No. 191. On November 20, 2024, the Court held a hearing to determine the credibility of Petitioner's alleged *Brady* violation. ECF No. 194.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

3

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains;" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See United states v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. *Brady* Violation

The suppression of evidence favorable to the accused violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 86 (1963). A court must vacate a conviction and order a new trial if the prosecution suppressed materially exculpatory evidence. *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011) (citing *Brady*, 373 U.S. at 83). To secure relief under *Brady*, a defendant must: (1) identify the existence of material evidence favorable to the accused; (2) show that the Government suppressed the evidence; and (3) demonstrate that the suppression was material. *Id.* at 701. When a *Brady* violation is alleged, the burden of proof rests with the defendant. *Id.* at 701–02 (citing *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001)).

### C. Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just

4

outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient ("performance prong"). *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as counsel as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense ("prejudice prong"). *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

## III. DISCUSSION

In his § 2255 Motion, Petitioner raises two grounds for relief. First, Petitioner asserts that the Government committed a *Brady* violation by suppressing the report of their pre-trial interview with Michael Morisi ("Morisi"). Pet'r's Mot. at 1 and 5. In support of his *Brady* claim, Petitioner attaches the sworn Declaration of Michael Morisi ("Declaration") Pet'r's Mot. at Ex. 1. Morisi was sentenced to two years in prison after pleading guilty to charges stemming from his time as the President of People Express Airlines. Pet'r's Mot. Ex. 1 ¶ 2. The Declaration summarizes conversations Morisi alleges he had with attorneys following his sentencing. *See id.* Morisi also outlines his prospective testimony if he would have been called to testify at Petitioner's trial. *See id.* Petitioner argues that the Government suppressed the report of this interview in violation of *Brady*. Pet'r's Mot. at 5.

Second, Petitioner asserts Ineffective Assistance of Counsel based on Attorney Kelleter's trial strategy.[2] He alleges that if Attorney Kelleter would have introduced certain exhibits, properly cross-examined the Government's witnesses, and called witnesses in defense, the jury would have had different evidence to weigh. *See id.* Petitioner asserts four Ineffective Assistance of Counsel claims based on: trial counsel's failure to (1) introduce critical exhibits at trial, (2) subpoena and call critical witnesses in his defense, (3) cross-examine critical witnesses for the Government to elicit key pieces of evidence for the defense, and (4) object to the entry of an order for restitution and to the entry of a preliminary order of forfeiture and money judgment. *Id.* He alleges that exhibits, lines of questioning, and witness testimony would cast doubt on the Government's theory of the case and would lend "substantial support" to defense positions. *Id.*

---

[2] Petitioner also retained Attorney David Littel. ECF No 54. The Court has reviewed his affidavit. Attorney Littel is a civil attorney who could not, and did not, provide substantive legal advice in this criminal action. Attorney Littel represented Petitioner in a limited capacity. Hearing Transcript at 92. For that reason, the Court is focusing on Attorney Kelleter's trial strategy in analyzing Petitioner's Ineffective Assistance of Counsel claim.

### A. Claim 1: *Brady* Violation

Petitioner alleges that at sentencing the Government offered to file a motion to substantially reduce Morisi's sentence if he agreed to meet about Petitioner's trial. Pet'r's Mot. at 5; ECF No. 181, Ex. 1 ¶ 4. Petitioner states the contents of the meeting were not disclosed to the defense. *Id.* at 6. Allegedly, the information Morisi provided at the meeting was material and could have been used to exculpate Petitioner and impeach the Government's witnesses. *Id.* at 7–8.

The Government disputes that Morisi made the statements in the Declaration. Resp. Opp'n at 9. The Government argues that even if Morisi made the statements at the meeting, they were not material and would not have impacted the trial outcome. *Id.* Further, the Government argues that the record, Attorney Kmet's affidavit, and Morisi's sentencing transcript either negates Morisi's claims or was information contained in a 2018 report that was turned over in discovery. *Id.* at 17. Lastly, the Government argues that even if Morisi's statements are accurate, they offer Petitioner no relief because it was either already disclosed or would not have produced a different verdict. *Id.* at 17–18.

As noted above, to secure relief under *Brady*, a defendant must first identify the existence of material evidence favorable to the accused. *United States v. King*, 628 F.3d at 701. And as Petitioner's counsel for this Motion correctly notes, "[t]he burden the [Petitioner] has is to show that the government was in possession of information they should have disclosed[.]" Hearing Transcript at 104. This requires the Court to determine the veracity of Petitioner's allegations.

The Court has doubts about the accuracy of Morisi's Declaration and testimony. First, Morisi claims, both in his Declaration and at the hearing, that on the day of his sentencing Assistant United States Attorney Samuels ("AUSA Samuels") told the Court that he would file a Rule 35 motion to reduce Morisi's sentence if he met with AUSA Samuels. Pet'r's Mot. Ex. 1 ¶ 4; Hearing

7

Transcript at 46. Second, Morisi claims that he met with the Government on February 22, 2020. Pet'r's Mot. Ex. 1 ¶ 6; Hearing Transcript at 11. Morisi claims to have met with four attorneys, a Special Agent from the Internal Revenue Service, and "approximately 10 other individuals with the Government." Mot. Ex. 1 ¶ 6. Paragraph seven of Morisi's Declaration states that he discussed four topics at the meeting. *Id.* ¶ 7(a–d). Paragraph eight of Morisi's Declaration states that AUSA Samuels wanted to have another meeting on Monday (February 24, 2020) for "witness prep." *Id.* ¶ 8.

Regarding Morisi's first claim, AUSA Samuels makes no mention of a Rule 35 motion in Morisi's sentencing transcript. *See USA v. Morisi*, 4:19-cr-44, ECF No. 42 (E.D. Va.). AUSA Samuels confirmed this at the hearing. Hearing Transcript at 46. Additionally, Assistant Federal Public Defender Kmet ("AFPD Kmet") stated in her affidavit that Morisi's statements regarding AUSA Samuels filing a Rule 35 motion are incorrect. ("Kmet Am. Aff."); ECF No. 189. Kmet Am. Aff. ¶ 5.

Second, Morisi claims that he met with the Government on Friday, February 22, 2020, but February 22, 2020, was a Saturday. Pet'r's Mot. Ex. 1 ¶ 6. AFPD Kmet's notes state that the meeting was held Monday, February 24, 2020. Kmet Am. Aff. ¶ 6. At the hearing, Morisi originally testified that he met with the government on February 22, 2020, but then clarified that he must have made a mistake. Hearing Transcript at 11; Hearing Transcript at 47. Morisi then claims that the Government asked him to "come the following day for a witness prep meeting." *Id.* at 13. If he first met with the Government on February 24, 2020, (as all the evidence indicates) and was asked to come in the next day for witness preparation, then that is inconsistent with his Declaration stating he was asked to come in for witness preparation on February 24, 2024. The testimony is also inconsistent with the statement that the two meetings took place days apart.

8

And while Morisi claims to have met with several individuals from the government, AFPD Kmet states that only her, the Government's attorneys, and the Special Agent were present. Kmet Am. Aff. ¶ 4; Hearing Transcript at 61. Further, AFPD Kmet states that her notes do not contain the information that Morisi provided in paragraphs seven and eight of his Declaration. Kmet Am. Aff. ¶ 7. Morisi's Declaration and testimony are riddled with inconsistencies and directly conflict with the testimony and affidavit of his attorney. During the hearing, Morisi was asked about how he gathered the information in his Declaration. Hearing Transcript at 48. Morisi replies that he did not take any notes of the meeting because "[t]here are certain things that happen in our lives that we don't forget the details, and I don't forget the details of what happened that day." *Id.* But Morisi seems to misremember the date of the meeting, and much of what he drafted in his declaration conflicts with what his own attorney recorded that day.

Attorney Kelleter's testimony at the hearing, paired with AFPD Kmet's affidavit, casts more doubt on Morisi's Declaration. On cross-examination, Attorney Kelleter noted that he receives *Jencks* materials that are reports of government witnesses in advance of trials. Hearing *Id.* at 87. Attorney Kelleter further testified that there are "plenty of times that [the Government has] prepared a witness and didn't produce more *Jencks* because there was nothing different" between an initial meeting and witness prep. *Id.* at 88. Next, Attorney Kelleter identified a document with a *Jencks* number on it and confirmed that he received the document. *Id.* at 88–89. Petitioner has failed to establish through witnesses that Morisi presented any new information at the February 24, 2020, meeting.

Another glaring issue with Morisi's Declaration is how it was drafted. At the hearing, AUSA Samuels asked Morisi how he put together the Declaration. Hearing Transcript at 52. Morisi testified that "[t]he initial draft was made by [Petitioner's Counsel]" in this matter. *Id.*

9

Morisi further testified that, after an hour and a half conversation, Petitioner's counsel "simply summarized everything that [Morisi] said." *Id.* He further testified that he "went through and edited and added things and removed some things and fixed it." *Id.* When asked whether he remembers what he changed, Morisi said he does not remember. *Id.* Morisi does not know which portions of the Declaration are his own words and which portions Petitioner's counsel "summarized." It is impossible for the Court to know either.

This information taken together suggests the parties only met once, on February 24, 2020, and that Morisi did not divulge the information he claims in his Declaration. Put simply, after considering the sentencing transcript, and the testimony of Attorney Kelleter and AFPD Kmet, Morisi's Declaration is unconvincing. Morisi has little to no credibility, and Petitioner does not credibly assert that the Government suppressed or withheld evidence from Petitioner's defense counsel.

Morisi then asserts that if he would have been called to testify, he would have testified to information that, in Petitioner's view, was material and exculpatory. Pet'r's Mot. Ex. 1 ¶ 9(a–j); Pet'r's Mot. at 7–8. He does not assert in his declaration that he shared this information with the parties at the meeting. He does not establish that the Government suppressed or withheld evidence from Petitioner's defense counsel. Thus, Petitioner has failed to meet his burden under *Brady*.

Even if Petitioner did allege that the Government suppressed evidence, he has not proven that the evidence was material. Evidence is material if there is a "reasonable probability that its disclosure would have produced a different result." *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015) (quoting *United States v. Bartko*, 728 F.3d 327, 340 (4th Cir. 2013)). The question is "whether in [the suppressed evidence's] absence [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Juniper v. Davis*, 74 F.4th 196, 210 (4th Cir.

2023) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). A court "do[es] not ignore other evidence presented at trial" in determining its confidence in the outcome. *Id.* Instead, courts "evaluate the whole case, taking into account the effect that the suppressed evidence, had it been disclosed, would have had on the evidence considered at trial." *United States v. Ellis*, 121 F.3d 908, 918 (4th Cir. 1997).

This Court concluded, and the Fourth Circuit agreed, that Petitioner was solely responsible for deciding how to fund the accounts. *See United States v. Spirito*, 36 F.4th 191, 200 (4th Cir. 2022) ("[T]he Government presented adequate evidence to support the jury's conclusion that the Defendant... was responsible for allocating restricted funds for a loan guarantee to [People Express]."). The Fourth Circuit concluded "[t]o be clear, the PAC executed the loan guaranty, but [Petitioner] single-handedly decided how to fund the collateral accounts that were pledged in support of the loan." *Id.* Nothing in Morisi's Declaration relates to the facts that supported the jury's guilty verdict. This Court concluded that the Government presented adequate evidence to support the jury's conclusion. Evidence that is unrelated to the jury's conclusion would have no effect on the evidence considered at trial.

AFPD Kmet's testimony reveals a similar story. AFPD Kmet testified that she thought that Morisi was not called as a witness because "they had already gotten the information that they needed from another witness" and that "Morisi's testimony would have been duplicative." Hearing Transcript at 67. Further supporting the Court's conclusion that the evidence the Government allegedly withheld was not material, Attorney Kelleter testified that Morisi did not come up frequently at trial because "[t]he jury trial focused on how the loan guarantee was funded, and that really didn't have anything to do with Mr. Morisi." *Id.* at 78.

When a *Brady* violation is alleged, the burden of proof rests with the defendant. *United*

11

*States v. King*, 628 F.3d at 701–02 (citing *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001)). Petitioner has failed to meet that burden. Petitioner does not credibly assert that the Government had and suppressed evidence from defense counsel. Even if Petitioner did credibly assert this, the evidence Petitioner presents is not material because it is not reasonably probable that its disclosure would have produced a different result. Accordingly, Petitioner's *Brady* claim is unsuccessful.

### B. Claim 2: Ineffective Assistance of Counsel

For the following reasons, Petitioner's first three Ineffective Assistance of Counsel claims do not satisfy the performance prong of the *Strickland* test. Petitioner's Ineffective Assistance of Counsel claim regarding the restitution order is not cognizable under § 2255, and his claim regarding the forfeiture money judgment was raised on appeal. Therefore, as explained further below, each of the Petitioner's Ineffective Assistance of Counsel claims lack merit.

#### i. Failure to Introduce Exhibits at Trial, Failure to Cross-Examine Witnesses for the Government, and Failure to Call Witnesses for the Defense

Petitioner alleges that he was not afforded effective assistance of counsel at trial. The first three claims allege that Attorney Kelleter unjustifiably omitted exhibits, evidence, and witnesses that fit the defense's theory. Pet'r's Mot. at 19. Stated differently, each of these claims takes issue with Attorney Kelleter's trial strategy. Accordingly, these three claims will be consolidated into one analysis.

First, Petitioner alleges that Attorney Kelleter's strategy focused on demonstrating that members of the PAC, not Petitioner, had made the decision to provide the loan guaranty and to allocate PAC funds to a specific account. *Id.* at 9. Petitioner argues that Attorney Kelleter failed to introduce exhibits that would have provided direct evidence of those theories and that other members of the PAC had a conflict of interest. *Id.*

12

Second, Petitioner alleges trial counsel's failure to introduce the exhibits from claim one prevented Petitioner from cross-examining several Government witnesses. *Id.* at 15. He argues that this failure, and the subsequent failure to cross-examine witnesses, would have supported the defense's theory. *Id.* Petitioner claims that trial counsel could have used the exhibits from claim one to elicit points from witnesses on cross-examination. *Id.*

Third, Petitioner alleges that trial counsel should have called seven witnesses that would have provided support to the defense theories. *Id.* at 16. In sum, Petitioner claims that trial counsel focused on demonstrating that other members of the PAC, not petitioner, were making decisions and that trial counsel did not implement a strategy to reflect that theory. *See id.* at 9, 11–13, 15, 17, 18.

The Government argues that defense counsel implemented a sound trial strategy, and that Petitioner cannot demonstrate it was objectively unreasonable. Resp. Opp'n at 22. The Government argues that the trial theory, as outlined in Attorney Kelleter's Affidavit, was not the theory that Petitioner alleges. ("Kelleter Aff."); Resp. Opp'n Ex. 1. Instead, the Government argues that "[t]he theory at trial was that 'no one committed a crime and no one acted inappropriately, not [Petitioner] and not the PAC." Resp. Opp'n at 21. The Government further argues that any documents consistent with trial counsel's theory was already presented to the jury, and any remaining evidence is inconsistent with the theory and at odds with the theory Petitioner presented at trial. Resp. Opp'n at 20.

Attorney Kelleter's Affidavit and the trial transcript supports the Government's argument that trial counsel implemented an objectively reasonable trial strategy. Attorney Kelleter stated in his opening statement that "nobody involved in this committed a crime." Trial Transcript at 115, ECF No. 112. Attorney Kelleter further noted that he did not "want to give the impression that in

saying that other people did certain things" that he was "pointing the finger and saying… they did something wrong." *Id.* at 114–15.

*Strickland* requires that reviewing courts afford counsel wide latitude to make strategic decisions. *Cox v. Weber*, 102 F.4th 663, 676 (4th Cir. 2024). And "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Attorney Kelleter was mindful of the effect of duplicative evidence on juries. Kelleter Aff. at 4. Petitioner claims that not calling a particular witness was a critical misstep. Pet'r's Mot. at 17. Petitioner contends that calling this witness would have exposed the witness's "obvious, material conflict of interest" and the witness's had first-hand knowledge of transaction, making it clear that Petitioner did not play a role in bringing the parties together. *Id.* Attorney Kelleter's strategic decision not to call a particular witness makes sense: probing a witness about his ethics and simultaneously asking him to support the defense's narrative may not be useful. Instead, Attorney Kelleter chose to pursue the same point in a different way. *Cox*, 102 F.4th at 676. Attorney Kelleter pursued the theory that no one was acting inappropriately, which would be fundamentally at odds with calling witnesses to testify about their conflicts.

Attorney Kelleter also used documents to support this theory in his closing statements. The Court inquired as to whether these documents were in evidence, and Attorney Kelleter responded that all the documents he was referencing were in evidence. Trial Transcript at 1660–61. This fits the Government's argument that any documents referenced by habeas counsel that are consistent with the trial theory are duplicative of what was already introduced into evidence and presented to the jury. Attorney Kelleter also references an email the Government used in their closing to suggest Petitioner was "leading efforts on the loan guaranty." *Id.* at 1663. Attorney Kelleter then refutes this evidence by stating the testimony in the case demonstrated the email had nothing to do with

the loan guaranty. *Id.* Petitioner's criticism of Attorney Kelleter's decisions at trial may be fair, "[b]ut we must still give it deference under *Strickland*." *Cox v. Weber*, 102 F.4th at 676.

Attorney Kelleter has demonstrated a sound trial strategy. He has demonstrated that he understood that presenting evidence of members of the PAC's wrongdoing was at odds with a theory that no one committed a crime or acted inappropriately. He also introduced exhibits to bolster his trial theory. After investigating the laws and facts relevant to plausible options, Attorney Kelleter made a series of strategic decisions to which the Court must afford high deference. Because counsel's representation does not fall below an objective standard of reasonableness, Petitioner has not satisfied the performance prong outlined in *Strickland*. Accordingly, Petitioner's Ineffective Assistance of Counsel claim is unsuccessful.

> ii. **Failure to Object to the Government's Restitution Order and Preliminary Order of Forfeiture**

Finally, Petitioner argues that counsel was ineffective because he failed to object to the Government's request to enter an order for restitution and to object to the preliminary order of forfeiture and money judgment. Pet'r's Mot. at 20. Petitioner argues that trial counsel failed to raise the issue of a money judgment or the amount of restitution during sentencing. *Id.* at 21. He argues that as a result he had no actual notice that the Court entered a judgment against him. *Id.* Petitioner further alleges that trial counsel failed to argue that Federal Rule of Criminal Procedure 32.2(b)(1)(A) requires the Court to "determine what property is subject to forfeiture under the applicable statute" and "whether the Government has established the requisite nexus between the property and the offense." *Id.* Petitioner argues that he could have challenged the constitutionality of the forfeiture if counsel raised the issue. *Id.*

The Government argues that to the extent the claims were raised and decided on direct appeal, they cannot be raised here. Resp. Opp'n at 22. The Government also argues that the claims

are not cognizable as a collateral attack. *Id.* Finally, the Government claims that Petitioner is challenging non-custodial aspects of his sentence that are not subject to challenge under § 2255. *Id.* at 22–23.

### a. Order of Restitution

The statutory text of § 2255 precludes Petitioner's challenge to the restitution order. Indeed, "virtually all federal courts of appeals to address the issue have concluded that challenges to restitution orders are not cognizable under § 2255." *United States v. Mayhew*, 995 F.3d 171, 183 (4th Cir. 2021). Petitioners cannot use § 2255 motions to obtain relief from restitution orders. *See id.* (affirming the dismissal of a petitioner's claim that his counsel provided ineffective assistance of counsel when he failed to object to a restitution calculation).

By its plain terms, § 2255 provides no avenue to challenge a restitution order. *Id.* at 183. Therefore, Petitioner's Ineffective Assistance of Counsel claim is unsuccessful.

### b. Forfeiture Money Judgment

A § 2255 petitioner may not "recast, under the guise of a collateral attack, questions fully considered" on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). A Petitioner cannot "circumvent a proper ruling... on direct appeal by []raising the same challenge in a § 2255 motion." *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013).

Petitioner argues that he had no actual notice of the judgment against him because of trial counsel's errors. The Fourth Circuit already fully considered this question and determined that "[Petitioner] had notice that forfeiture would be a part of his case through the issuance of a Presentence Investigation Report, motion for a preliminary order of forfeiture, and preliminary order of forfeiture—the latter two of which noted the precise forfeiture amount." *Spirito*, 36 F.4th at 213. Petitioner cannot relitigate this issue and his Ineffective Assistance of Counsel claim fails.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion to Vacate, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 is **DENIED**. ECF No. 181

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

The Court **DIRECTS** the Clerk to mail a copy of this Order to counsel for Petitioner and Respondent.

**IT IS SO ORDERED**.

Newport News, Virginia
December *12*, 2024

/s/
Raymond A. Jackson
United States District Judge